Gen.189]                                                                          189

**FAMILY LAW – CHILD ABUSE AND NEGLECT — REPORTING OBLIGATION WHEN VICTIM OF CHILD ABUSE OR NEGLECT IS NOW AN ADULT OR ALLEGED ABUSER IS DEAD — CONFIDENTIALITY OF REPORTS**

December 3, 1993

*The Honorable Ann Marie Doory*
*House of Delegates*

You have requested our opinion on several issues relating to the State law on the reporting of child abuse and neglect. Specifically, you pose the following questions:

1.    Does a person who has reason to believe that someone who is now an adult was abused or neglected when that individual was a child have an obligation, under §§5-704 or 5-705 of the Family Law Article, Maryland Code ("FL"Article), to report the alleged abuse or neglect?

2.    If the law generally does require persons to report suspected abuse or neglect involving a victim who is now an adult, does this obligation exist if the alleged abuser is deceased?

3.    Under what circumstances are reported allegations of child abuse or neglect disclosed to the public, and by whom?

For the reasons stated below, we conclude as follows:

1.    FL §§5-704 (with respect to health practitioners, police officers, educators, and human service workers) and 5-705 (with respect to all other persons) require reporting whenever there is reason to believe that child abuse or neglect occurred in the past, even if the alleged victim is an adult when the incident comes to light.  Of course, the fact that the victim is now an adult should be part of the report, and this fact may be taken into account by the authorities who receive the report when they determine the actions to take in response to the report.

2.    FL §§5-704 and 5-705 require a report under these circumstances even if the alleged abuser is believed to be deceased. Information that the alleged abuser is deceased should be included in the report, and the authorities receiving the report may take appropriate account of that circumstance.

3.    Any report made under FL §§5-704 or 5-705 is confidential, may be disclosed only under the limited circumstances specified by statute, and may not be disseminated to the public at large.

# I

## Reporting When the Victim is an Adult

### A.    *Principles of Statutory Construction*

As with any other statute, when we attempt to construe the child abuse reporting law we try to be faithful to "the purpose of the legislation, determined in the light of the statute's language and context." *Leppo v. State Highway Administration*, 330 Md. 416, 422, 624 A.2d 539 (1993). In so doing, "our first recourse is to the words of the statute, giving them their ordinary and natural import." *Fairbanks v. McCarter*, 330 Md. 39, 46, 622 A.2d 121 (1993).

However, "[i]f the statutory language itself is insufficient to lead us comfortably to conclude what the Legislature intended, we look beyond the words and examine legislative history when it is available and the context of the legislation." *Leppo*, 330 Md. at 422. "Context may include related statutes, pertinent legislative history and 'other material that fairly bears on the ... fundamental issue of legislative purpose or goal ....'" *GEICO v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713 (1993) (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628 (1987)). *See also, e.g., Harris v. State*, 331 Md. 137, 146, 626 A.2d 946 (1993).

### B.    *Statutory Text*

FL §5-704(a) sets out an unqualified duty to report child abuse or neglect by certain occupations:

Notwithstanding any other provision of law, including any law on privileged communications, each health practitioner, police officer, or educator or human service worker, acting in a professional capacity, who has reason to believe that the child has been subjected to:

(1)(i) abuse, shall notify the local department [of social services] or the appropriate law enforcement agency; or

(ii) neglect, shall notify the local department; and

(2) if acting as a staff member of a hospital, public health agency, child care institution, juvenile detention center, school, or similar institution, immediately notify and give all information required by this section to the head of the institution or designee of the head.[1]

FL §5-704 requires an immediate oral report and a prompt written report. These reports are to contain the following information:

(1) the name, age, and home address of the child;

(2) the name and home address of the child's parent or other person who is responsible for the child's care;

(3) the whereabouts of the child;

(4) the nature and extent of the abuse or neglect of the child, including any evidence or information available to the reporter concerning possible previous instances of abuse or neglect; and

---

[1] The terms "health practitioner," "police officer," and "educator or human service worker" are defined in §5-701(h), (o), and (f) respectively.

(5) any other information that would help determine:

(i) the cause of the suspected abuse or neglect; and

(ii) the identity of any individual responsible for the abuse or neglect.

FL §5-704(c).

A person who is not in one of the occupational groups identified in FL §5-704(a) is instead subject to the legal duty to report set out in §5-705(a):

(1) Except as provided in paragraphs (2) and (3) of this subsection, notwithstanding any other provision of law, including a law on privileged communications, a person other than a health practitioner, police officer, or educator or human service worker who has reason to believe that a child has been subjected to abuse or neglect shall:

(i) if a person has reason to believe that the child has been subjected to abuse, notify the local department [of social services] or the appropriate law enforcement agency; or

(ii) if the person has reason to believe that the child has been subjected to neglect, notify the local department.[2]

---

[2] The exceptions set out in FL §5-705(a)(2) excuse reporting of information encompassed by the attorney-client privilege described in §9-108 of the Courts Article, reporting of information otherwise encompassed by the duty of confidentiality owed by an attorney to his or her client, and reporting that would violate the constitutional right to assistance of counsel. The exception set out in FL §5-705(a)(3) refers to certain confidential communications to a minister, clergyman, or priest.

Under FL §5-705(d), "[t]o the extent possible, a report made under subsection (a) of this section shall include the information required by [FL] §5-704(c) ...."[3]

A "child" is "any individual under the age of 18 years." FL §5-701(d). "Abuse" is defined as the "physical injury" or "sexual abuse" of a child by the child's caretakers. FL §5-701(b)(1).[4] The term "sexual abuse" is defined as "any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member." FL §5-701(p)(1). "Neglect" is defined as "the leaving of a child unattended or other failure to give proper care and attention to a child by the child's parents, guardian, or custodian under circumstances that indicate that the child's health or welfare is significantly harmed or placed at risk of significant harm." FL §5-701(n)(1).

---

[3] Those who report are granted immunity from civil liability or criminal penalty for doing so in good faith. FL §5-708; §5-362 of the Courts and Judicial Proceedings Article. *See Catterton v. Coale*, 84 Md. App. 337, 579 A.2d 781 (1990), *cert. denied*, 321 Md. 638, 584 A.2d 67 (1991). Conversely, the failure to report might, under some circumstances, pose a risk of liability. *See generally Furr v. Spring Grove State Hosp.*, 53 Md. App. 474, 454 A.2d 414, *cert. denied*, 296 Md. 60 (1983); *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 551 P.2d 334 (1976).

[4] The full definition of "abuse" is as follows:

> (1)(i) The physical injury of a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household family member, under circumstances that indicate that the child's health or welfare is significantly harmed or at risk of being significantly harmed; or

> (ii) sexual abuse of a child, whether physical injuries are sustained or not.

> (2) "Abuse" does not include, for that reason alone, providing a child with nonmedical religious remedial care and treatment recognized by State law.

FL §5-706, which specifies the investigatory duties of the agencies that receive reports of child abuse and neglect, indicates that the General Assembly's primary concern was the health, safety, and welfare of a child who has been victimized:

> Within 24 hours after receiving a report of suspected abuse and within 5 days after receiving a report of suspected neglect, the local department or the appropriate law enforcement agency shall:
>
> (i) see the child:
>
> (ii) attempt to have an on-site interview with the child's caretaker; [and]
>
> (iii) decide on the safety of the child, wherever the child is, and of other children in the household ....

FL §5-706(b)(2). This language, referring as it does to "the child," implies that the General Assembly assumed that the report would concern someone who was then a child and that protective services might be needed for that child. *See* FL §5-709(c), 5-710, and 5-713. *See generally* 76 *Opinions of the Attorney General* 220 (1991).

Yet, as the reference to "other children in the household" suggests, the General Assembly had broader concerns as well — namely, to protect *other children* who might be at risk from the alleged abuser. This concern is reflected in the following additional duty imposed on the local department: to "decide on the safety of other children in the care or custody of the alleged abuser." FL §5-706(b)(2)(iii). *See also* FL §5-706(c)(2)(ii). Thus, the statute reflects the common-sense proposition that if one child has been abused, the safety of other children over whom the alleged abuser has control is doubtful, and the local department has a duty to check on their safety.

Cases of child abuse implicate another highly significant legislative objective– potential prosecution of the abuser. The report is the first step, for it is to provide "any ... information that would help ... identi[fy] ... any individual responsible for the abuse ...." FL

§5-704(c)(5)(ii). Moreover, the statute manifests a legislative concern with effective prosecution: "The local department, the appropriate law enforcement agencies, the State's Attorney within each county and Baltimore City, the department's office responsible for child care regulation, and the local health officer shall enter into a written agreement that specifies the standard operating procedures for the investigation and prosecution of reported cases of suspected abuse." FL §5-706(e). *See also* FL §5-706(f) (requiring certain procedures for joint investigations of sexual abuse). In addition, the local department is required to provide the local State's Attorney with both its preliminary findings after receiving a notice of suspected abuse and a written report of its findings after it completes its investigation. Obviously the information is intended to aid the State's Attorney in determining whether to pursue possible charges under Article 27, §35A of the Code, which makes it a felony, punishable by lengthy incarceration, for a "parent or other person who has permanent or temporary care or custody or responsibility for the supervision of the child or a household or family member who causes abuse to the child ...."

## C.    *Legislative History*

In 1964, the General Assembly enacted the first statute that required the reporting of suspected child abuse. Chapter 104, Laws of Maryland 1964. Under this act, a physician who rendered medical care to a child under the age of fourteen under circumstances indicating that the child had been mistreated was required to report the abuse to the local police department or the Maryland State Police.[5] The statute granted immunity from civil liability for anyone participating in the report or any juvenile proceeding resulting from the report.

The General Assembly substantially revised the reporting requirements in 1966 by requiring "every health practitioner, educator, health, mental health, or social worker or law enforcement officer" who contacted, examined, attended, or treated a child and believed that a child had "sustained physical injury as a result of

---

[5] The previous year, the General Assembly enacted a statute that made it a felony to maliciously beat, strike, or otherwise mistreat a child under the age of fourteen to such a degree as to require medical treatment. *See* Chapter 743, Laws of Maryland 1963.

abuse" to report the abuse.  Chapter 221, Laws of Maryland 1966. The person making the report was required to report orally to the local department of social services and, if the reporter believed or had reason to believe that immediate protection was needed, also make the report to the police.  Within 48 hours of the initial report, the individual was required to make a written report to the local department and the local State's Attorney.

Chapter 835 of the Laws of Maryland 1973 amended the 1966 statute to allow the professionals who were required to report to do so to either the local department or the police.  Chapter 835 also required the agency initially receiving the report to notify the other. Thus, neither the local department nor the police were allowed to proceed alone.  Chapter 835 also clarified earlier language by imposing a duty to report child abuse on persons other than the specified professionals. *See* 60 *Opinions of the Attorney General* 51 (1975).

In 1978, the General Assembly enacted provisions for the protection of neglected children.  Among other provisions, "every health practitioner, educator, social worker, and law enforcement agency or officer" with reason to believe that a child was neglected was obliged to report the pertinent facts to the local department of social services.  Chapter 880, Laws of Maryland 1978.

In 1983, the General Assembly recognized that professionals were but one source for the reporting of neglected children and provided that "[a]ny person other than a health practitioner, law enforcement agency, police officer, educator or social worker who has a reasonable belief that a child is a neglected child may file with the local department an oral or written report of the suspected neglect."  Chapter 492, Laws of Maryland 1983.

In order to encourage more reporting, in 1986 the General Assembly authorized occupational licensing sanctions against any health practitioner, police officer, educator, or social worker who knowingly fails to report suspected child abuse or neglect to the local department or the appropriate law enforcement agency. Chapter 539, Laws of Maryland 1986.

In 1987, the General Assembly decided to combine the child abuse and child neglect statutes and create Subtitle 7, "Child Abuse

and Neglect," in the Family Law Article.  Chapter 635, Laws of Maryland 1987.  Chapter 635 greatly expanded the reporting requirements of professionals by requiring them to report suspected child abuse and neglect whether they had seen or treated the child or not.  As under prior law, "a person other than a health practitioner, police officer, or educator or human service worker who has reason to believe that a child has been subject to abuse or neglect" was required to notify the local department or law enforcement agency.

Chapter 635 also contained a provision with a delayed effective date that would have eliminated any privilege (for example, doctor-patient or attorney-client) that a professional or individual may have established with the victim, the abuser, or any other individual that would prevent that individual or professional from reporting the abuse.[6]  However, the General Assembly also created an exception from reporting for mental health providers who specialize in the psychiatric treatment of pedophilia.  Commonly known as the "Berlin" exception, after the doctor who proposed it, the exception excused a health practitioner from reporting child sexual abuse if the alleged abuse occurred prior to the time when the individual began the psychiatric treatment, the practitioner was treating the individual for the purpose of curing the individual's pedophilia, and the practitioner's knowledge of the abuse came exclusively from the individual who abused the child.

The last substantial change to the reporting statutes occurred in 1989 when the General Assembly repealed the "Berlin" exception.  Chapter 730 of the Laws of Maryland 1989.  Thus, all health practitioners, including mental health providers that counsel child abusers, have an unqualified duty to report child abuse. *See* 75 *Opinions of the Attorney General* 76 (1990) (mental health providers must report even when the child abuser was referred by an attorney for evaluation prior to criminal proceedings).

---

[6] Before the repeal of the privileges became effective, the General Assembly reconsidered its decision and, in Chapter 770 of the Laws of Maryland 1988, partially restored privileges by creating additional exceptions to the reporting requirements of FL §5-705 for certain privileged communications.  *See* note 2 above.

Overall, the legislative history demonstrates an ever-widening scope for the reporting requirements. Having made the judgment that mandatory reporting was an essential element in efforts to combat child abuse and neglect, the General Assembly has consistently sought to remove impediments to the flow of information to the authorities. When policy choices were explicitly presented to the General Assembly, it has opted for more inclusive reporting. For example, in 62 *Opinions of the Attorney General* 157 (1977), Attorney General Burch reviewed policy arguments for and against the imposition of reporting obligations on health practitioners who learned of child abuse from a source other than the child and urged that "the Legislature's reasoned judgment is required to set priorities in this area." 62 *Opinions of the Attorney General* at 161. A decade later, the Legislature set its priority by requiring such reporting. The repeal of the short-lived "Berlin" exception is another example of legislative priority-setting.

Indeed, we find special pertinence in the legislative history of the repeal of the "Berlin" exception. This action came after the General Assembly was informed of evidence showing a pattern of abuse in pedophilia cases that makes reporting all the more important to protect other potential victims.

In testimony to the House Judiciary Committee regarding House Bill 1210, to repeal the "Berlin" exception, Detective Gary Costello of the Montgomery County Police Department cited several incidents of pedophiles committing sexual abuse against children during their entire lives. Detective Costello mentioned one case in which a local educator had staged his death "after being accused of molesting children in Vermont.... For the next fifteen years ... under an assumed identity he worked as schoolmaster and principal, sexually abusing many children." In another case, a pedophile "was arrested multiple times throughout his life for child exploitation and re-offended again while in the Johns Hopkins Treatment Center."

In written testimony on House Bill 1210, the Montgomery County Juvenile Court Committee stated: "Experts tell us that a single pedophile in his 'career' molests hundreds of children. However, his arrest, prosecution, and court-ordered treatment may result from the discovery of only *one* incident of child sexual abuse. His other victims, compelled into silence both by threats and the sheer embarrassment of having been molested, may never come

forward for help on their own."   In another letter of support for House Bill 1210, the PTA Council of Howard County stated that "the chronic nature of child molestation, the child molester's propensity for multiple victims, and the fatal outcome of AIDS make the need for early identification of HIV-infected child molesters readily apparent. An infected child molester who continues to abuse endangers the lives of present and future victims."

Similar testimony supported Senate Bill 99, the Senate version of the legislation to repeal the "Berlin" exception.  The National Resource Center on Child Sexual Abuse cited a report on adult survivors of child sexual abuse which found that almost two-thirds of the sample never told anyone about the abuse prior to the age of 18.  In its testimony, the National Resource Center on Child Sexual Abuse also cited concern for the spread of AIDS as an important reason for mandatory reporting.  The testimony noted a case in Virginia in which the brother of a man who died of AIDS called the police to identify him as a child molester.  The police performed a search of the deceased's residence and found hundreds of child pornography photos.   The police were left with unanswered questions of who the children were, how many had been molested, and how many might have been infected with the HIV virus.  Since there was no way of identifying the victims, they remained unnotified.

### D.    *Analysis and Conclusion*

We acknowledge that FL §§5-704 and 5-705 could reasonably be construed to apply only if the alleged victim were still a child.  The grammar − "reason to believe that a child has been subjected to" abuse or neglect − and the emphasis elsewhere in the statute on protective services for that child lend weight to a narrow reading.

But in the end, we are convinced that the better construction of the language is that reporting is required whenever an act of prior child abuse or neglect occurred, no matter the present age of the victim.  We believe that the General Assembly meant to ensure that the appropriate investigatory and prosecutorial authorities would learn of *all* instances in which a child was victimized.

To be sure, the primary goal of the reporting law − providing protection and services to a victimized child − cannot be achieved

when the victim is now an adult.  But protecting that one individual is not the sole legislative objective, though it may be the primary one.  Even if one particular victim of abuse or neglect is now an adult and thus outside the scope of the State's protective efforts, others who are still children might continue to be at risk and in need of child protective services.[7]  The investigative duties of the local department of social services extend to this potential group of other victims.  *See* FL §5-706(b)(3) and (4) and (c)(2)(ii).[8]  And as the legislative history of the repeal of the "Berlin" exception vividly shows, the Legislature was well aware that many pedophiles continue their pattern of abuse with new victims.  Furthermore, the risk of AIDS underscores the need for a focus broader than the fact that one victim of abuse is now an adult.

In the case of reported child abuse of an individual who is now an adult, moreover, the State's interest in potential criminal prosecution is fully served by the reporting mandate.  An offense under Article 27, §35A is a felony with no specified limitations period.  Hence, the State may institute a prosecution at any time. *Massey v. State*, 320 Md. 605, 610, 579 A.2d 265 (1990).[9]

Our interpretation of current law is strengthened by one Maryland appellate decision and some out-of-state authority.  In *Reynolds v. State*, 88 Md. App. 197, 594 A.2d 609 (1991), a 56-year-old Carroll County resident was confronted by his four adult

---

[7] A 1991 survey of local departments of social services found that, in  approximately 80% of the cases where an adult client reports abuse as a child, a minor child remained in the home where the client had been abused.  Letter of advice from Assistant Attorney General Wendy Greenburg to Ms. Jacqueline Frich, at 3 (October 30, 1991).

[8] This opinion does not attempt to spell out the details of an appropriate response by the local department to a report of abuse or neglect when the known victim is now an adult.  We believe, however, that the local department must take reasonable steps, in light of the information available to it, to ascertain whether any children are presently at risk.

[9] As a practical matter, a prosecution becomes more difficult if a great deal of time has passed since the offense.  But that practical concern is a factor for the State's Attorney to assess in considering whether to bring charges; it is not a basis for an undue narrowing of the flow of information to the State's Attorney.

daughters with having sexually abused them when they were children.  The defendant then sought counseling but was informed that, in order to receive counseling, he must sign a form consenting to the counseling center's notification to the police of any incriminating evidence regarding the abuse.  88 Md. App. at 201. After receiving advice from the local State's Attorney Office that he was not immune from prosecution, the defendant eventually signed the consent form in order to receive counseling because he assumed that other agencies would have a similar procedure. *Id*.  The Court noted that it was "indeed the case" that other agencies were required to report the abuse.  88 Md. App. at 201.  After the defendant disclosed his abuse of his four now-adult daughters, the counselor informed the State's Attorney's Office, which then notified the State Police and an investigation was started.  88 Md. App. at 206. Ultimately, the defendant was convicted of several sexual offenses. 88 Md. App. at 200.

On appeal, the defendant argued that his incriminating admissions to the counselor and the State Police violated his privilege against self-incrimination.  While the Court eventually held that his admissions were voluntary and did not violate his Fifth Amendment privilege, the Court briefly mentioned the child abuse reporting statute.  In discussing the doctor-patient privilege, the Court noted that, because of the child abuse reporting statute, there was "no privilege against a counsellor's legally required disclosure of the fact of child abuse to law enforcement officials." 88 Md. App. at 203.  The Court did not qualify its statement that reporting should only occur when a child, rather than an adult, reported abuse.  Nor did the Court in its opinion ever question the applicability of the reporting statute to the factual situation at hand.

The Commonwealth Court of Pennsylvania had the occasion to deal with this issue under that state's reporting law.  In *Brozovich v. Circle C Group Homes, Inc.*, 548 A.2d 698 (Pa. Commw. Ct. 1988), a woman who was 19 informed a private provider of social services that she had been abused in her foster home when she was 17.  The private agency then informed Pennsylvania's child protective services agency.  Because of the child abuse report, the foster parents lost their license to act as foster parents.  They then brought suit against the private social service agency for making a false child abuse report, not made in good faith as the law required. The trial court dismissed the suit after finding that the social service

agency had immunity from liability under the child abuse reporting law.

On appeal, the foster parents argued that because the victim was 19 years of age when she made the report of abuse, the child abuse reporting law was inapplicable, because it only applies to children under the age of 18. The appeals court summarily dismissed this argument, stating that "the law grants immunity to those reporting child abuse without regard to the age of the victim when the abuse was reported." 548 A.2d at 700.

In reaching its decision in the *Brozovich* case, the Pennsylvania court relied on an earlier child abuse reporting case, *Cruz v. Commonwealth,* 472 A.2d 725 (Pa. Commw. Ct. 1984). In that case, a father sought to have his record expunged of a child abuse report. The father argued that since his minor daughter made the report two years after the last alleged incident of sexual abuse occurred, the report did not fall into time limit for reporting required by the statute. His argument was based on the purpose section of the statute, which stated that the reporting laws were enacted to respond to the urgent needs of abused children for protective services, and on the provision mandating that oral reports of abuse be filed immediately and written reports within 48 hours of the initial report. In rejecting the father's argument, the court stated:

> We find nowhere in the statute any suggestion that the legislature intended to create a statute of limitations for reports of child abuse.... The time limits prescribed by the statute were obviously intended for the protection of the child, not to shield the alleged abuser.... [T]he statutory construction which the appellant urges would be contrary to the legislative intent to protect children from further abuse.

472 A.2d at 730.

We are not insensitive to policy arguments that our construction of the reporting law might be contrary to the desire of some adults who were victims of child abuse and who wish to limit disclosure to their therapists only or who would prefer to seek recourse against the alleged abuser through private channels, not

involving government agencies. Mandating reporting under such circumstances, it has been suggested earnestly, will simply discourage these adults from coming forward and thereby effectively prevent treatment of both the victim and the alleged abuser. In other situations, the events will have occurred so many years ago that neither protection of those who are still children nor criminal prosecution of the alleged abuser is really at stake.

There is merit to these policy arguments, as there is to the countervailing policy considerations. These arguments, however, are addressed to the wisdom of the current reporting law, not to its construction. If the General Assembly accepted these arguments, it would draw lines in the statute that are not there now − allowing reporting to be forgone if the incident occurred more than X years ago, or if the victim is now more than Y years old, or affording some discretion to a therapist in the timing of the report. But we cannot construe the current statute as if it *already* contained such lines. It does not. If we were to accept the proposition that no reporting was required if the victim were now an adult, then we would be saying that there was no duty to report if an 18 year old had been subjected to recent abuse and had younger siblings in the care of the abuser. That would be an untenable construction of the statute, one that we cannot imagine the General Assembly intended.

In reality, the scope or nature of an investigation may vary depending on the information provided in a report, including the time that has passed since the abuse occurred and the present circumstances of the alleged abuser. And surely those who are conducting an investigation can be sensitive to the concerns of an adult who is in therapy. Judgments of this kind, however, are to be made on a case-by-case basis by the local department of social services and appropriate law enforcement agencies. Current law does not excuse compliance with the duty to report to those authorities.

## II

### Reporting When Alleged Abuser is Dead

We shall not repeat here the analysis set out at length in Part I above. The current law does not excuse reporting even if the

information available to the person who is required to report suggests that the alleged abuser is dead. Perhaps the information is wrong; perhaps the death occurred so recently that individuals who are still children might be in need of services as a result of the abuse.

Of course, if it is certain that the alleged abuser died many years ago, these considerations will not apply. Nevertheless, this office cannot import into the statute an exception that was not enacted by the General Assembly.

### III

### Confidentiality

FL §5-707(a) provides as follows:

> Subject to federal and State law, the [Social Services] Administration shall provide by regulation adopted in accordance with Title 10, Subtitle 1 of the State Government Article (1) procedures for protecting the confidentiality of reports and records made in accordance with this subtitle; (2) conditions under which information may be released; and (3) conditions for determining in cases whether abuse, neglect, or sexual abuse is indicated, ruled out, or unsubstantiated.

Furthermore, Article 88A, §6(b) contains the general requirement that "all records and reports concerning child abuse or neglect are confidential and their unauthorized disclosure is a criminal offense ...." This subsection specifies that information contained in reports or records concerning child abuse and neglect may be disclosed only under the following circumstances:

> (1) Under a court order;

> (2) To personnel of local or State departments of social services, law enforcement personnel, and members of multi-disciplinary case consultation teams, who are investigating a report of known of suspected

child abuse or neglect or who are providing services to a child or family that is the subject of the report;

(3) To local or State official responsible for the administration of the child protective services necessary to carry out their official functions;

(4) To a person who is the alleged child abuser or the person who is suspected of child neglect if that person is responsible for the child's welfare and provisions are made for the protection of the identity of the reporter or any other person whose life or safety is likely to be endangered by disclosing the information;

(5) To a licensed practitioner who, or an agency, institution, or program which is providing treatment or care to a child who is the subject of child abuse or neglect; or

(6) To a parent or other person who has permanent or temporary care and custody of a child, if provisions are made for the protection of the identity of the reporter or any other person whose life or safety is likely endangered by disclosing the information.[10]

These Maryland provisions are in furtherance of a confidentiality requirement in the federal Child Abuse Prevention and Treatment Act. *See* 42 U.S.C. §5103(b)(2)(E); 45 C.F.R. §1340.14(i). As a prior opinion summarized, "The various confidentiality statutes and regulations ... make it very clear that [the Social Services Administration] is prohibited from publicly disclosing the identity of the person who made a report of suspected abuse; the nature and extent of the child's injuries that prompted the report; the identity of

---

[10] COMAR 07.02.07.18, the pertinent regulation of the Social Services Administration, is essentially a reiteration of the limited statutory bases for disclosure.

the alleged abuser; information obtained in the local department's investigation or the sources of that information; or the evaluations of the child's family and home made in the course of the investigation."  71 *Opinions of the Attorney General* 368, 374 (1986).[11]

Thus, a victim of abuse can be assured that the agencies receiving information as a result of a report will safeguard the information from public disclosure.  "[T]he purpose behind the nondisclosure laws is to encourage the reporting of child [abuse and] neglect cases." *Freed v. Worcester County*, 69 Md. App. 447, 455, 518 A.2d 159 (1986), *appeal dismissed*, 484 U.S. 804 (1987).

## IV

## Conclusion

In summary, it is our opinion that:

1.    FL §§5-704 (with respect to health practitioners, police officers, educators, and human service workers) and 5-705 (with

---

[11] In this opinion, Attorney General Sachs identified another narrow circumstance under which disclosure would be permissible:

> If abuse has resulted in the death of a child and if the parent or other caretaker has been arrested on charges related to that abuse, the custodian of pertinent records may disclose the following information:
>
>      (i) Whether the child had ever been the subject of a report of suspected abuse,
>
>      (ii) the date on which any such report was received,
>
>      (iii) the dates on which the local department of social services initiated and completed its investigation into the validity of the reports, and
>
>      (iv) the general nature of the department's investigation.

71 *Opinions of the Attorney General* at 368-69.

respect to all other persons) require reporting whenever there is reason to believe that child abuse or neglect occurred in the past, even if the alleged victim is an adult when the incident comes to light. Of course, the fact that the victim is now an adult should be part of the report, and this fact may be taken into account by the authorities who receive the report when they determine the actions to take in response to the report.

2.    FL §§5-704 and 5-705 require a report under these circumstances even if the alleged abuser is believed to be deceased. Information that the alleged abuser is deceased should be included in the report, and the authorities receiving the report may take appropriate account of that circumstance.

3.    Any report made under FL §§5-704 or 5-705 is confidential, may be disclosed only under the limited circumstances specified by statute, and may not be disseminated to the public at large.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
> *Opinions & Advice\**

\*Amanda Stakem Conn, a volunteer intern in the Opinions & Advice Division, contributed substantially to the preparation of this opinion.